```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - X
 3
       UNITED STATES OF AMERICA,   :   10-CR-512(ARR)
 4                                 :
                                   :   U.S. Courthouse
 5                                 :   Brooklyn, New York
           -against-               :
 6                                 :   TRANSCRIPT OF
                                   :   PLEADING
 7                                 :
                                   :
 8     ALAN BERKUN,                :   March 4, 2011
                                   :   2:00 p.m.
 9           Defendant.            :
                                   :
10   - - - - - - - - - - - - - - X

11   BEFORE:
                  HONORABLE ALLYNE R. ROSS, U.S.D.J.
12
     APPEARANCES:
13
     For the Government:     LORETTA E. LYNCH, ESQ.
14                           United States Attorney
                             271 Cadman Plaza East
15                           Brooklyn, New York 11201
                             BY:  LAN NGUYEN, ESQ.
16                               Assistant U.S. Attorney

17

18

19   For the Defendant:      DIANE FISHER, ESQ.

20

21

22   Court Reporter:    Holly Driscoll, CSR
                        Official Court Reporter
23                      225 Cadman Plaza East
                        Brooklyn, New York 11201
24                      (718) 613-2274

25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
```

1  THE CLERK: This is United States of America versus
2  Alan Berkun, docket number CR-10-512
3  Counsel, please state your appearances.
4  MS. NGUYEN: Good afternoon, Your Honor, Lan Nguyen
5  for the United States.
6  MS. FISHER: Good afternoon, Your Honor, Diane
7  Fisher of Hoffman & Pollak for Mr. Berkun.
8  THE COURT: Good afternoon.
9  Ms. Fisher, what does your client wish to do?
10  MS. FISHER: He's here to plead guilty to a single
11  count indictment today, indictment number 10-CR-512.
12  THE COURT: Okay.
13  Mr. Berkun, as we go through the guilty plea, there
14  are many questions that I have to ask you and many things that
15  I have to explain to you. It's very important that you
16  understand everything that I ask and everything that I explain
17  so if there's anything at all that you don't fully understand,
18  please just stop me and I'll express myself differently until
19  do you understand, all right?
20  THE DEFENDANT: Yes, ma'am.
21  THE COURT: Okay. Would you please swear
22  Mr. Berkun.
23  THE CLERK: Sure.
24  (Defendant sworn by the clerk.)
25  THE CLERK: Please state your name for the record.

1    THE DEFENDANT:  Alan M. Berkun.
2    THE COURT:  Mr. Berkun, do you understand that
3 having been sworn, now that you're under oath, your answers to
4 my questions would be subject to another prosecution for
5 perjury or false statement if you didn't answer them
6 truthfully.
7    THE DEFENDANT:  Yes, Your Honor, I understand.
8    THE COURT:  Okay.  How old are you?
9    THE DEFENDANT:  52, Your Honor.
10    THE COURT:  Okay.  And how far did you get in
11 school?
12    THE DEFENDANT:  I graduated from college and I have
13 several advanced degrees, Your Honor.
14    THE COURT:  Okay.  Are you now or have you recently
15 been under the care of a physician or a psychiatrist?
16    THE DEFENDANT:  I have been under the care of a
17 physician, Your Honor, on a regular basis and I have not been
18 under the care of a psychiatrist.
19    THE COURT:  Okay.  And what are you seeing the
20 physician for?  You have a physical condition or ailment?
21    THE DEFENDANT:  Oh, I didn't understand, Your Honor.
22 I see a physician say three or four times annually because I
23 take a cholesterol medication commonly known as Lipitor so I'm
24 required to give blood to make sure that it doesn't affect my
25 liver or things of that nature.  It is a regular --

1  THE COURT: I take it from what you're saying that
2  neither the physical condition that you have nor the
3  medication that you're taking in any way affects your ability
4  to understand what's going on here today?
5  THE DEFENDANT: No, not at all, Your Honor.
6  THE COURT: Okay. I guess apart from the Lipitor,
7  in the last 24 hours have you taken any narcotic drugs or
8  medicine or pills of any kind or drunk any alcoholic beverage?
9  THE DEFENDANT: No, Your Honor, I have not.
10 THE COURT: Okay. Have you ever been hospitalized
11 or treated for narcotic addiction?
12 THE DEFENDANT: No, Your Honor.
13 THE COURT: Is your mind clear?
14 THE DEFENDANT: Yes, it is, Your Honor.
15 THE COURT: You understand what's going on in the
16 proceeding?
17 THE DEFENDANT: Yes.
18 THE COURT: Okay. Ms. Fisher have you discussed
19 this matter thoroughly with your client?
20 MS. FISHER: I have, Your Honor.
21 THE COURT: Does he understand the rights that he
22 would be waiving by pleading guilty?
23 MS. FISHER: Yes, he does, Your Honor.
24 THE COURT: Is he capable of understanding the
25 nature of the proceeding?

1           MS. FISHER:  He is, Your Honor.
2           THE COURT:  Do you have any doubt as to his
3   competence to plead at this time?
4           MS. FISHER:  I do not, Your Honor.
5           THE COURT:  Have you advised him of the maximum
6   sentence and fine that may be imposed and discussed with him
7   the advisory sentencing guidelines and the other statutory
8   sentencing factors?
9           MS. FISHER:  Yes, I have, Your Honor.
10          THE COURT:  Okay.  Mr. Berkun, have you had plenty
11  of time to discuss your case with your lawyer?
12          THE DEFENDANT:  Yes, Your Honor, I've had plenty of
13  time.
14          THE COURT:  Are you satisfied to have her represent
15  you in this proceeding?
16          THE DEFENDANT:  Yes, Your Honor, I'm quite
17  satisfied.
18          THE COURT:  Okay.  Have you received a copy of the
19  indictment, that's the document that sets forth the charge
20  against you in this case?
21          THE DEFENDANT:  Yes, I have, Your Honor.
22          THE COURT:  Did you read it?
23          THE DEFENDANT:  Yes, I've had an opportunity to read
24  it and review it.
25          THE COURT:  Okay.  And have you discussed it with

1  Ms. Fisher?  Did you discuss it with any of your lawyers?
2              THE DEFENDANT:  Oh, I discussed it with my
3  attorneys, yes, Your Honor.
4              THE COURT:  Do you understand the charges in the
5  indictment?
6              THE DEFENDANT:  Yes, I do, Your Honor.
7              THE COURT:  Okay.  I'm going to go through it with
8  you yet again and if you have any question as to what it means
9  I want you to ask me or ask Ms. Fisher, all right.
10             THE DEFENDANT:  Okay, Your Honor.
11             THE COURT:  It charges that between approximately
12 June and August of 2008, in this district and elsewhere, you
13 knowingly and intentionally attempted to execute a scheme and
14 artifice to defraud persons in connection with securities of
15 an issuer with a class of securities registered under
16 Section 12 of the 1934 Act, specifically the common stock of
17 XenaCare Holdings, Inc., that it was part of the scheme and
18 artifice that you sought artificially to inflate the price of
19 the common stock of XenaCare Holdings through the payment of
20 undisclosed cash kickbacks to corrupt brokers and that it was
21 also part of the scheme that on approximately August 16th of
22 2008 you paid $1,120 in cash kickbacks to John Doe who you
23 believed to have access to corrupt brokers.
24             Do you understand that charge?
25             THE DEFENDANT:  Yes, I do, Your Honor.

1  THE COURT: Okay. Do you understand that you have
2  the right to continue to plead not guilty to that charge?
3  THE DEFENDANT: Yes, I do understand that, Your
4  Honor.
5  THE COURT: And if you did, under the Constitution
6  and under the laws of the United States you would be entitled
7  to a speedy and public trial by jury with the assistance of
8  your attorneys, do you understand that?
9  THE DEFENDANT: Yes, I do, Your Honor.
10  THE COURT: And do you understand that you would be
11  entitled to the assistance of your attorneys at every critical
12  stage of the proceeding?
13  THE DEFENDANT: Yes, I do, Your Honor.
14  THE COURT: Okay. Now, at a trial you would be
15  presumed to be innocent and the government would have to
16  overcome that presumption and prove you guilty by competent
17  evidence beyond a reasonable doubt. You would not have to
18  prove that you were innocent. If the government were to fail
19  to prove you guilty beyond a reasonable doubt, the jury would
20  have the duty to find you not guilty, do you understand that?
21  THE DEFENDANT: Yes, I do, Your Honor.
22  THE COURT: In the course of the trial the witnesses
23  for the government would have to come into court and testify
24  in your presence, your attorneys would have the opportunity to
25  cross-examine the government's witnesses, to object to any

8

1  evidence the government offered and to offer evidence on your
2  behalf, do you understand that?
3            THE DEFENDANT:  Yes, I do, Your Honor.
4            THE COURT:  Now, at a trial, while you would have
5  the right to testify if you chose to do so, you couldn't be
6  required to testify.  Under the Constitution of the United
7  States you can't be compelled to incriminate yourself, you
8  can't be required to say anything that would in any way
9  indicate your guilt of the crime with which you're charged.
10 If you chose not to testify, I would instruct the jury that
11 they couldn't hold that against you in any way, do you
12 understand that?
13           THE DEFENDANT:  Yes, I do, Your Honor.
14           THE COURT:  Now, if you plead guilty and your guilty
15 plea is accepted, you're going to be giving up your
16 constitutional right to a trial and all of the other rights
17 that I just described.  There would be no further trial of any
18 kind and no right to appeal from a judgment of guilty.  I
19 would simply enter a judgment of guilty on the basis of your
20 guilty plea, do you understand that?
21           THE DEFENDANT:  Yes, I do, Your Honor.
22           THE COURT:  Also, if you plead guilty, I'm going to
23 have to ask you questions about what it was that you did in
24 order to satisfy myself you actually are guilty of the crime
25 to which you seek to plead guilty.  You'll have to answer my

1  questions and acknowledge your guilt and in doing that, you're
2  going to be giving up one of the rights I just described which
3  is the right not to say anything that would in any way
4  indicate your guilt, do you understand that?
5         THE DEFENDANT:  Yes, I do, Your Honor.
6         THE COURT:  Okay.  Are you willing to give up your
7  right to a trial and all of the other rights that I've just
8  described?
9         THE DEFENDANT:  Yes, I am.
10         THE COURT:  I'm going to hand down what's been
11  marked as Court Exhibit Number 1 in your case, a written
12  agreement.  Turning to the last page, is that your signature
13  on the agreement?
14         THE DEFENDANT:  Yes, it is, Your Honor.
15         MS. NGUYEN:  Your Honor, if I may, it is not the
16  last page, it's the -- on the original Court Exhibit 1 it's
17  the third to last page, the last two pages of the agreement
18  are Schedule A which are referenced in the agreement.
19         THE COURT:  Thank you I'm sorry, page six.
20         MS. NGUYEN:  Yes, Your Honor.
21         THE COURT:  Okay.  Before you signed it did you read
22  it?
23         THE DEFENDANT:  Yes, I read this agreement Your,
24  Honor before, I signed it.
25         THE COURT:  Okay.  Did you discuss it with your

10

1 lawyer.
2     THE DEFENDANT:  Yes, I did.
3     THE COURT:  Do you understand it?
4     THE DEFENDANT:  Yes, I understand it, Your Honor.
5     THE COURT:  Is there anything at all in the
6 agreement that you don't fully understand?
7     THE DEFENDANT:  No, Your Honor.
8     THE COURT:  Do you understand that that written
9 agreement sets forth your whole agreement with the government
10 relating to your guilty plea in this case?
11     THE DEFENDANT:  Yes, I do, Your Honor.
12     THE COURT:  Okay.  Do you know the longest --
13     MS. FISHER:  Sorry, do you mind if we have a minute,
14 Your Honor?
15     THE COURT:  I'm sorry?
16     MS. FISHER:  Can we have just a minute?
17     THE COURT:  Yes, please.
18     (Pause.)
19     MS. FISHER:  I apologize, Your Honor, we're ready.
20     THE COURT:  That's all right.  So, do you fully
21 understand everything in that agreement?
22     THE DEFENDANT:  Yes, I do, Your Honor.
23     THE COURT:  Okay.  And you understand that that
24 agreement sets forth all your agreements with the government
25 relating to your guilty plea in this case?

11

1  THE DEFENDANT: Yes, I understand that, Your Honor.
2  THE COURT: Do you know the longest prison term that
3  could be imposed under the statute, under the law upon your
4  guilty plea?
5  THE DEFENDANT: Yes, I do, Your Honor. It is stated
6  on the front page.
7  THE COURT: That's right.
8  THE DEFENDANT: It could be 25 years, Your Honor.
9  THE COURT: That's right.
10  THE DEFENDANT: God forbid.
11  THE COURT: Do you also understand that you're
12  subject to a term of supervised release of up to five years?
13  THE DEFENDANT: Yes, I understand that, Your Honor.
14  THE COURT: Do you know what a term of supervised
15  release is?
16  THE DEFENDANT: Could you repeat that question Your
17  Honor.
18  THE COURT: Do you know what it means, what a term
19  of supervised release is?
20  THE DEFENDANT: Yes, I understand that, Your Honor.
21  THE COURT: Okay. So, you understand that's a
22  period of time that you serve after you're released from
23  prison, you're not in prison but there are many restrictions
24  that are placed on your liberty, so many I can't even begin to
25  review all of them for you now. If you were to breach any of

12

1 the conditions of your supervised release while you were out
2 on supervised release, you could be sent back to prison for up
3 to three years without any credit for any of the time that you
4 may have spent out on supervised release, do you understand
5 that?
6         THE DEFENDANT:  I'm well aware of those provisions,
7 Your Honor.
8         THE COURT:  And do you understand that you could be
9 find up to $250,000?
10         THE DEFENDANT:  Yes, Your Honor.
11         THE COURT:  And that you will be required to make
12 restitution in an amount to be determined by the court at the
13 time of your sentence?
14         MS. FISHER:  Just a minute, Your Honor.
15         (Pause while counsel confers with the defendant.)
16         MS. FISHER:  Your Honor, could you repeat that last
17 question.
18         THE COURT:  Yes.
19         You will be required to make restitution in an
20 amount that the Court will determine at the time of your
21 sentence.  That seems to be paragraph (1)(e) of the agreement.
22         (Pause.)
23         THE DEFENDANT:  I understand that, Your Honor.
24         THE COURT:  Okay.  And, finally, the Court must
25 impose a special assessment which is like a fine of $100, do

13

1 you understand that?
2         THE DEFENDANT: Yes, I do, Your Honor.
3         THE COURT: Now, the United States Sentencing
4 Commission has issued advisory sentencing guidelines that must
5 be considered along with a great number of other statutory
6 sentencing factors in determining the sentence in your case.
7 Have you and your lawyers talked about how these matters might
8 apply in your case?
9         THE DEFENDANT: Yes, we have, Your Honor.
10         THE COURT: Do you understand that no one will be
11 able to determine the sentence that applies in your case until
12 after the Probation Department has prepared a presentence
13 report and you and your attorney and the Assistant have had an
14 opportunity to review the report and object to any of the
15 findings made by the probation officer.
16         THE DEFENDANT: Yes, I understand that, Your Honor.
17         THE COURT: Do you also understand that if sentenced
18 to a prison term, you would be required to spend the entire
19 period of that prison term in prison?
20         THE DEFENDANT: Yes, Your Honor.
21         THE COURT: Okay. Can you estimate for me the
22 anticipated guideline range.
23         MS. NGUYEN: Your Honor, the government estimates
24 that the offense carries a range of imprisonment of 0 to
25 6 months assuming that the defendant falls within Criminal

14

1  History Category II.
2              THE COURT:  Anything further to add to that,
3  Ms. Fisher?
4              MS. FISHER:  No, Your Honor.
5              THE COURT:  Okay.  Mr. Berkun, do you understand
6  what the lawyers have said?
7              THE DEFENDANT:  Yes, Your Honor.
8              THE COURT:  Okay.  But you understand they're just
9  estimating, they could be wrong.  It could turn out that the
10 advisory guideline sentence that applies in your case is
11 higher than what they currently estimate it would be and it
12 could also turn out that because of the other statutory
13 sentencing factors the Court might impose a sentence that's
14 even higher than one called for by the advisory sentencing
15 guidelines and if any of those things were to happen, you
16 would not be permitted to withdraw your guilty plea simply
17 because no one could tell you in advance what your sentence
18 would be, do you understand that?
19             THE DEFENDANT:  Yes, Your Honor, I understand that.
20             THE COURT:  Okay.  And do you understand that in
21 paragraph four of the agreement you have agreed, among other
22 things, not to file an appeal or otherwise challenge your
23 conviction or sentence by habeas corpus proceeding or any
24 other provision if a term of imprisonment is imposed on you
25 that is six months or less, do you understand that?

15

1    THE DEFENDANT:  Yes, I do, Your Honor.
2    THE COURT:  Okay.  Is there anything else that you'd
3 like me to bring to Mr. Berkun's attention in the agreement?
4    MS. NGUYEN:  No, Your Honor.
5    THE COURT:  Okay.  Do you have any questions at all
6 that you want to ask me about the charge against you or your
7 rights or anything relating to this proceeding?
8    THE DEFENDANT:  No, Your Honor.
9    THE COURT:  Are you ready to enter a plea?
10   THE DEFENDANT:  Yes, I am, Your Honor.
11   THE COURT:  Ms. Fisher, do you know of any reason
12 why your client should not plead guilty to the charge in the
13 indictment?
14   MS. FISHER:  I do not, Your Honor.
15   THE COURT:  How do you plead, do you plead not
16 guilty or do you plead guilty?
17   THE DEFENDANT:  I plead guilty, Your Honor.
18   THE COURT:  Are you making the guilty plea
19 voluntarily and of your own free will?
20   THE DEFENDANT:  Yes, I am, Your Honor.
21   THE COURT:  Has anyone threatened, forced or coerced
22 you in any way to plead guilty?
23   THE DEFENDANT:  No, Your Honor.
24   THE COURT:  Other than the agreements with the
25 government that are set forth in this written agreement that

16

1  we marked as Court Exhibit 1, has anyone made any promise to
2  you that has caused you to plead guilty?
3          THE DEFENDANT:  No, Your Honor.
4          THE COURT:  Has anyone made any promise to you as to
5  what your sentence will be?
6          THE DEFENDANT:  No, Your Honor.
7          THE COURT:  Did you between approximately June and
8  August of 2008 knowingly and intentionally attempt to execute
9  an artifice to defraud persons in connections with the
10 securities of an issuer with a class of securities registered
11 under the 1934 Exchange Act, specifically the common stock of
12 XenaCare Holdings, did you do that?
13         THE DEFENDANT:  Yes, Your Honor.
14         THE COURT:  Okay.  You tell me in your own words
15 what it is that you did that makes you think you're guilty of
16 this.
17         THE DEFENDANT:  Your Honor, between approximately
18 June and August of 2008 I agreed with a broker named William
19 Bloom, who I've known for many years, to pay him and/or
20 another broker with whom I worked money to have their clients
21 buy the common stock in a company called XenaCare Holdings,
22 Inc., which shares were publicly traded on a U.S. stock
23 exchange.  My understanding with Mr. Bloom is that we would
24 commence these activities once I notified him that I was in
25 possession and ownership of the XenaCare stock.  Before I was

1 actually ready to move forward with the matter Mr. Bloom
2 indicated to me that he had already had a broker to purchase
3 the shares and owed the broker a sum of money for having --
4 for his having done so. Pursuant to that information I sent
5 Mr. Bloom $1,120 in cash. We never did anything further on
6 the matter.
7     THE COURT: All right. And I take it that the
8 purpose of this payment was to artificially inflate the price
9 of the stock; is that correct?
10     THE DEFENDANT: Yes, Your Honor.
11     THE COURT: Where were you? Did anything take place
12 in relation to this scheme in Brooklyn, Queens or Staten
13 Island?
14     THE DEFENDANT: No, Your Honor.
15     THE COURT: What is the venue?
16     MS. NGUYEN: Your Honor, if the government were to
17 prove this at trial, we would prove that the shares or the
18 money moved through this district, the Eastern District of New
19 York.
20     THE COURT: Okay. Anything else I should ask?
21     MS. NGUYEN: No, Your Honor.
22     THE COURT: Based on the information that you've
23 given to me, I find that you're acting voluntarily, that you
24 fully understand your rights and the consequences of your plea
25 and that there is a factual basis for your plea and I,

18

1  therefore, accept your guilty plea to the charge in the
2  indictment.
3           THE CLERK:  Sentencing will be set by Judge
4  Glasser's chambers.
5           (Time noted:  2:30 p.m.)
6           (End of proceedings.)