U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RB:LXN
F.#2009R01652

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 4, 2011

By Hand and ECF

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      RE:  United States v. Alan Berkun
           Criminal Docket Nos. 00-1248(S-1), 00-930,
           01-1457, 10-512, 11-214

Dear Judge Glasser:

    The government respectfully writes in response to the defendant Alan Berkun's letter dated November 18, 2011 which requests that the Court resolve the issue of the defendant's applicable advisory sentencing Guidelines in advance of sentencing. The Court has scheduled oral argument for December 7, 2011.

I.    Background

    The defendant Alan Berkun pleaded guilty in the above-referenced cases to (1) one count of conspiracy to commit securities, mail and wire fraud, in violation of 18 U.S.C. § 371 (00-CR-1248)(S-1); (2) two counts of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (00-CR-1248 and 01-CR-1457); (3) one count of securities fraud conspiracy, in violation of 18 U.S.C. § 371 (00-CR-930); (4) one count of attempted securities fraud, in violation of 18 U.S.C. §§ 1348 and 1348 (10-CR-512), and (5) one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1) (11-CR-214).

    On October 7, 2011, the Probation Department issued a Second Revised Presentence Investigation Report ("PSR").

    The PSR calculated the defendant's Guidelines range to be 324 to 405 months' custody based on the 2010 version of the Sentencing Guidelines, which was the same in all relevant respects as the version in effect when the defendant's attempted

securities fraud offense ended in August 2008.[1]  PSR ¶¶ 140, 237.  The PSR groups together the defendant's convictions for securities fraud.  PSR ¶ 169.  Based in part on enhancements of causing a loss of more than $10 million, victimizing more that 250 people and association with a broker-dealer that were added to the Guidelines between 2001 and 2003, as well as a four-point enhancement for being an organizer of criminal activity, the PSR set the defendant's adjusted offense level at 44.  PSR ¶¶ 141-150.  The PSR also groups (1) the money laundering counts, PSR ¶ 157, (2) the money laundering and securities counts together under Guidelines § 3D1.2(c), and (3) the tax and securities counts together under Guideline § 3D1.2(d).  PSR ¶ 169.

The PSR set the adjusted offense level for all of the combined offenses at 44 -- the highest offense level of the grouped counts.  PSR §§ 169-174; see Guidelines § 3D1.3(a).  After awarding the defendant a three-level downward adjustment for acceptance of responsibility, the PSR set forth a total offense level of 41.  That offense level, combined with the defendant's criminal history category of I, yielded the advisory Guidelines range of 324 to 405 months' custody.

On November 3, 2011, the defendant filed a letter with the Probation Department, copying the government, with objections to the PSR ("Obj. Ltr.").  On November 18, 2011, counsel for the defendant, counsel for the government and the probation officer participated in a conference call to discuss the defendant's objections to the PSR.  After the call, the defendant, with the government's consent, filed a letter dated November 18, 2011 asking for oral argument on the issue of the defendant's applicable Guidelines range and seeking permission for the parties to file submissions.

II. Objections to Sentencing Guidelines Calculation

The defendant first objects to the total offense level calculation of 41 and moves that it be adjusted to level 29, arguing that the 2000 version and not the 2010 version of the Guidelines should apply.  Obj. Ltr. at 4-5; PSR ¶ 140.  The defendant argues that applying the 2010 Guidelines raises an "*ex post facto* issue" because the "most serious charges involve offenses committed before 2000," when the applicable Guidelines for fraud offenses were lower than the Guidelines in effect when

---

[1]  At the time the PSR was drafted, the 2010 Guidelines were in effect.  The 2011 Guidelines, which are now in effect, are the same in all relevant respects to the 2007 Guidelines.

the attempted securities fraud offense was completed in August 2008. Id. at 4. The defendant points out that in this case, the "charges were contained in separate indictments that were brought years apart, and they were consolidated for sentencing." Id.

Second, the defendant objects to a four-point enhancement for being a "leader" of the schemes charged in 00-CR-1248(S-1) and the 00-CR-930. Id. at 5; PSR ¶ 148.

Third, the defendant objects to a two-point enhancement for obstruction of justice in connection with the tax offense charged in 11-CR-214. Id. at 7; PSR ¶ 167.

The government will not seek a four-point role enhancement, see PSR ¶ 148, and will not seek a two-point obstruction of justice enhancement relating to the tax charge, see PSR ¶ 167.

III. The Court Should Apply the One-Book Rule

The government agrees with the Probation Department that the defendant's advisory sentencing Guidelines should be calculated based on the 2010 Guidelines pursuant to the "one-book rule" set forth in § 1B1.11(b)(3). See United States v. Kumar, 617 F.3d 612 (2d Cir. 2010).

The "one-book rule" states[2]:

(a) The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.

(b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

(2) The Guidelines Manual in effect on a particular date shall be applied in its entirety. . . .

(3) If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines

---

[2] The "one-book rule" is a policy statement.

>Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses.

The defendant argues that application of the one-book rule would pose *ex post facto* issues because the most serious charges against him involved offenses committed before 2000.[3] Obj. Ltr. at 4-5. The defendant points out, and the government does not dispute, that the difference between the application of the 2000 and 2010 versions of the Guidelines is significant and detrimental to the defendant. Obj. Ltr. at 4-5; see also PSR ¶ 140. The defendant also points out that the attempted securities conduct completed in 2008 was "unrelated, subsequent conduct." Def. Ltr. (Nov. 18) at 2.

The defendant's argument, however, is foreclosed by the Second Circuit's decision in United States v. Kumar, 617 F.3d 612, 628 (2d Cir. 2010). In Kumar, the defendants engaged in a backdating scheme that ended in fall of 2000. Id. at 617. A federal investigation commenced in 2002 and continued through the fall of 2004. Id. The defendants made efforts to obstruct the investigation. Id. at 617-18. They were ultimately charged with numerous counts of conspiracy, securities fraud, wire fraud, obstruction of justice and making false statements. Id. The defendants' offenses of conspiracy, securities fraud and making false statements ended by October 31, 2000. Id. at 618. In contrast, the defendants' obstruction offenses ended in April 2004. Id. The PSR calculated the defendant's advisory sentencing range under the 2005 version of the Guidelines.[4] Id.

At sentencing, the defendant raised an *ex post facto* issue based on the completion of the conspiracy and securities

---

[3] For a law to contravene the *Ex Post Facto* clause, "two critical elements must be present: First, the law must be retrospective, that is, it must apply to events occurring before its enactment, and second, it must disadvantage the offender affected by it." Miller v. Florida, 482 U.S. 423, 430 (1987) (internal quotations omitted); see United States v. Kilkenny, 493 F.3d 122, 126 (2d Cir. 2008) ("[T]he *Ex Post Facto* Clause enshrines in the Constitution a basic presumption of our law, that is, legislation in the criminal law is not to be applied retroactively." (internal quotation marks omitted)).

[4] The 2005 Guidelines was the same in all relevant respects as the version in effect when the defendants' obstruction offense ended in April 2004.

fraud offenses in October 2000.  Id.  The district court rejected the argument and calculated the Guidelines range based on the 2005 Guidelines.[5]  Id. at 618-19.

The Second Circuit affirmed, squarely rejecting the defendants' *ex post facto* argument.  Id. at 624.  The Court reasoned that the one-book rule did not offend the fundamental concerns -- notice and government restraint -- protected by the *Ex Post Facto* clause, and held that "the adoption of the one-book rule prior to the commission of the defendants' obstruction offense had placed them on notice of the consequences of committing that second offense."  Id. at 628.

Kumar is controlling.  Accordingly, no *ex post facto* concern is raised in this case.  Indeed, like the defendants in Kumar, the defendant in this case was placed on notice of the consequences of committing the later attempted securities fraud offense.  Accordingly, the Court should calculate the defendant's advisory sentencing Guidelines using the 2011 version of the Guidelines.[6]

                                            Very truly yours,

                                            LORETTA E. LYNCH
                                            United States Attorney

By:           /s/
        Lan Nguyen
        Assistant U.S. Attorney
        (718) 254-6162

cc: Clerk of Court (ILG)(By Hand)
    Jeff Hoffman, Esq./Susan Wolfe, Esq. (By Email)
    Mary Ann Betts, Probation Department (By Email)

---

[5]     The district court imposed non-Guidelines sentences that downwardly departed from the Guidelines' calculation of life imprisonment for both defendants.  Kumar, 617 F.3d at 619.

[6]     The 2011 Guidelines version is the same in all relevant respects as the 2007 version and the 2010 version used to calculate the Guidelines for the PSR.